**United States District Court**
**Western District of Wisconsin**

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION, INC.** | |
| *Plaintiff,* | |
| *v.* | |
| **MEAGAN WOLFE,** in her official capacity as the Administrator of the Wisconsin Elections Commission, | Case No. 3:24-cv-285 |
| *Defendant.* | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Public Interest Legal Foundation, Inc. ("Foundation") brings this action for declaratory and injunctive relief for Defendant's violations of Section 8(i)(1) of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507(i)(1) ("Public Disclosure Provision").

## SUMMARY OF THE ACTION

1.     Wisconsin's statutory exemption from the NVRA, 52 U.S.C. § 20503(b), is invalid with respect to the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i)(1) under the authority of *Shelby Cty. v. Holder*, 570 U.S. 529 (2013), *City of Boerne v. Flores*, 521 U.S. 507 (1997), and the principles articulated therein. The Foundation seeks relief from Defendant's NVRA violations, as alleged herein.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States. This Court also has jurisdiction under 52

1

U.S.C. § 20510(b), because the action seeks injunctive and declaratory relief under the NVRA. This Court may also grant declaratory relief under 28 U.S.C. § 2201.

3.      Because Wisconsin's statutory exemption from the NVRA, 52 U.S.C. § 20503(b), is invalid as applied to the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i)(1), the Court may exercise jurisdiction over the Defendant.

4.      Venue in this Court is proper under 28 U.S.C. § 1391(b)(1), because the Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

5.      The Foundation is a non-partisan, 501(c)(3) public interest organization incorporated and based in Alexandria, Virginia. The Foundation promotes the integrity of the electoral process nationwide through research, education, remedial programs, and litigation. The Foundation regularly utilizes the NVRA's Public Disclosure Provision and state and federal open records laws that require public disclosure of government records. Using records and data compiled through these open records laws, the Foundation analyzes the programs and activities of state and local election officials to determine whether lawful efforts are being made to keep voter rolls current and accurate as required by federal and state law, and to determine whether eligible registrants have been improperly removed from voter rolls. The Foundation also uses public records and data to produce and disseminate reports, articles, blog and social media posts, and newsletters to advance the public education aspect of its organizational mission.

6.      Defendant Meagan Wolfe is the Administrator of the Wisconsin Elections Commission ("WEC"), and is Wisconsin's chief election official, Wis. Stat. § 5.05(3g).

7.      Administrator Wolfe is sued only in her official capacity.

## BACKGROUND

*The NVRA's Public Disclosure Provision*

8.      "For many years, Congress left it up to the States to maintain accurate lists of those eligible to vote in federal elections, but in 1993, with the enactment of the National Voter Registration Act (NVRA), Congress intervened." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018).

9.      The NVRA is "a complex superstructure of federal regulation atop state voter-registration systems." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 5 (2013).

10.     The multi-layered system in which the NVRA operates is permitted by the Constitution's Elections Clause. U.S. Const. Art. I, § 4, cl. 1. *See also Inter Tribal*, 570 U.S. at 8-9.

11.     When Congress passed the NVRA, it found,

(1)     the right of citizens of the United States to vote is a fundamental right;

(2)     it is the duty of the Federal, State, and local governments to promote the exercise of that right; and

(3)     discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities.

52 U.S.C. § 20501(a).

12.     Congress enacted the NVRA for the following purposes:

(1)     to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;

(2)     to make it possible for Federal, State, and local governments to implement this Act in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;

(3)     to protect the integrity of the electoral process; and

(4)     to ensure that accurate and current voter registration rolls are maintained.

52 U.S.C. § 20501(b).

13.     The NVRA imposes various requirements on the States with respect to voter registration, including the requirement that state driver's license applications serve as applications for voter registration, 52 U.S.C. § 20504(a)(1), and the requirement that each state use reasonable efforts to remove the names of registrants who are ineligible due to death or a change in residency, 52 U.S.C. § 20507(a)(4)(A)-(B).

14.     The NVRA also requires the States to allow public inspection and reproduction of voter list maintenance records. The NVRA's Public Disclosure Provision provides, "Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1).

15.     The only records exempted from the NVRA's Public Disclosure Provision are records that "relate to a declination to register to vote or the identity of the voter registration agency through which any particular voter registered." 52 U.S.C. § 20507(i)(1).

16.     The NVRA's Public Disclosure Provision reflects Congress's findings and furthers the NVRA's purposes by making transparent government decisions about who can and cannot vote. In short, the NVRA's Public Disclosure Provision exists so the public can evaluate the adequacy and lawfulness of officials' voter list maintenance actions.

17.     In the words of the Fourth Circuit, the NVRA's Public Disclosure Provision "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery,

4

oversights, or inefficiencies." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334-35 (4th Cir. 2012).

18.     In the words of the First Circuit, the Public Disclosure Provision "evinces Congress's belief that public inspection, and thus public release, of Voter File data is necessary to accomplish the objectives behind the NVRA." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 54 (1st Cir. 2024).

19.     Various United States District Courts accord. *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12 (S.D. Fla., Mar. 30, 2018) (citing 52 U.S.C. § 20507(i)) ("To ensure that election officials are fulfilling their list maintenance duties, the NVRA contains public inspection provisions."); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 721 (S.D. Miss 2014) ("The Public Disclosure Provision thus helps 'to ensure that accurate and current voter registration rolls are maintained.'") (citations and quotations omitted).

***The NVRA's Statutory Exemption for States with Election Day Registration Thirty Years Ago***

20.     NVRA Section 4(b) provides that the NVRA does not apply to states that, on August 1, 1994, did not have a voter registration requirement, or allowed all voters to register at the polling place on Election Day ("Election Day Registration"). 52 U.S.C. § 20503(b)(1)-(2) (hereafter, the "NVRA Exemption").

21.     Wisconsin has offered Election Day Registration continuously since at least August 1, 1994, and Wisconsin is therefore supposedly exempt from the NVRA under 52 U.S.C. § 20503(b)(2).

22.     Due to the NVRA Exemption, Wisconsin is not required to maintain all voter list maintenance records for at least two years. 52 U.S.C. § 20507(i)(1).

23.    Due to the NVRA Exemption, Wisconsin is not required to make all voter list maintenance records public. 52 U.S.C. § 20507(i)(1).

24.    Due to the NVRA Exemption, Wisconsin is not required to limit records-production costs to "photocopying at a reasonable cost." 52 U.S.C. § 20507(i)(1).

25.    Five additional states—Idaho, Minnesota, New Hampshire, North Dakota, and Wyoming—are also exempt from the NVRA. *See* U.S. Department of Justice, The National Voter Registration Act of 1993 (NVRA), https://www.justice.gov/crt/national-voter-registration-act-1993-nvra ("What States are covered by the NVRA's requirements?").

***Wisconsin Requires Voter Registration***

26.    Wisconsin currently requires voter registration. Wis. Stat. § 6.27.

27.    In addition to Election Day Registration at polling places, Wisconsin offers voter registration in person at clerks' offices, by mail, and through the Internet by electronic application. *See* Wis. Stat. §§ 6.28, 6.29, 6.30.

***Wisconsin Law Requires Robust Voter List Maintenance Programs and Activities***

28.    Wisconsin law currently requires performance of voter list maintenance programs and activities. *See generally* https://elections.wi.gov/statistics-data/voter-list-maintenance (last accessed April 6, 2024).

29.    Wisconsin law requires WEC to mail notices to all registrants who have been registered to vote for the past four years but have not voted. Wis. Stat. § 6.50(1). The recipients' registration records are deactivated unless they request continuation of their registration within 30 days. Wis. Stat. § 6.50(2).

30.     Wisconsin law requires a similar notice and deactivation procedure "[u]pon receipt of reliable information that a registered elector has changed his or her residence to a location outside of the municipality[.]" Wis. Stat. § 6.50(3).

31.     Wisconsin law permits governing bodies to contract with the U.S. Postal Service "to receive change of address information with respect to individuals residing within the municipality for revision of the elector registration list." Wis. Stat. § 6.50(8).

32.     Wisconsin reported mailing 622,370 address confirmation notices to registrants between January 1, 2021 and December 31, 2022. Election Assistance Commission, Election Administration and Voting Survey 2022 Comprehensive Report at 183, *available at* https://www.eac.gov/sites/default/files/2023-06/2022_EAVS_Report_508c.pdf (last accessed April 6, 2024) ("2022 EAVS"). Nearly half of these notices (299,490) were returned as undeliverable. *Id.*

33.     Wisconsin law requires the municipal clerk to deactivate a registrant's registration record "upon authorization by an elector." Wis. Stat. § 6.50(6).

34.     Wisconsin law permits registered electors to challenge the validity of another registrant's registration record, Wis. Stat. § 6.48(1)-(2), a process that can result in the removal of the challenged registrant from the registration list, Wis. Stat. § 6.48(d).

35.     Registrants who are removed from the registration list must reregister to vote. Wis. Stat. § 6.50(10).

36.     Wisconsin law prohibits voting by the mentally incompetent, Wis. Stat. § 6.03(1)(a), and provides for challenge to a registrant's eligibility "based on an allegation that an elector is incapable of understanding the objective of the elective process," Wis. Stat. § 6.48(3).

37.     Wisconsin law also prohibits voting by "[a]ny person convicted of treason, felony or bribery, unless the person's right to vote is restored through a pardon or under s. 304.078(3)." Wis. Stat. 6.03(1)(b).

38.     In short, Wisconsin law provides for numerous official processes through which a registered voter can gain and lose her eligibility to vote.

39.     In Wisconsin, records concerning the activities described in the preceding paragraphs are not subject to disclosure under the NVRA's Public Disclosure Provision.

40.     Between January 1, 2021 and December 31, 2022, Wisconsin removed 643,975 registrants (17.5 percent of registered voters) for various reasons. *See supra* 2022 EAVS at 189.

41.     Wisconsin is also part of an interstate compact called the Electronic Registration Information Center ("ERIC"), which exists "to assist states in improving the accuracy of America's voter rolls and increasing access to voter registration for all eligible citizens."[1] Wis. Stat. § 6.36(1)(ae).

42.     Wisconsin receives reports from ERIC that identify registrants who may be ineligible due to their death, relocation to another Wisconsin jurisdiction or state, or registration record duplication. *See* WEC, Electronic Registration Information Center (ERIC), https://elections.wi.gov/statistics-data/voter-list-maintenance/electronic-registration-information-center-eric-0 (last accessed April 5, 2024).

43.     The accuracy of ERIC's work has been criticized. Barbara Arnwine, the former executive director of the Lawyers' Committee for Civil Rights Under Law, stated, "ERIC should be called ERROR because it's that erroneous and that full of flaws." Palast, *ERIC Crow, Jim*

---

[1] ERIC FAQs, "What is ERIC?" https://ericstates.org/faq/ (last accessed April 5, 2024).

*Crow's liberal twin* (July 15, 2020), https://www.nationofchange.org/2020/07/15/eric-crow-jim-crows-liberal-twin/ (last accessed April 5, 2024).

44.    Ms. Arnwine specifically identified errors affecting Wisconsin registrants:

> ERIC claims to find people who've moved. Now, apparently almost half the people on the list are young people. Listen, in Wisconsin in 2018 during the primary election, suddenly 44,000 people found themselves ineligible to vote. They had been purged. Turns out, the administrators of ERIC admitted an error in their own system that misidentified 44,000 people.

*Id.*

45.    The Brennan Center for Justice reported the following in a 2019 report:

> Wisconsin … reported that although ERIC was helpful in updating more than 25,000 registration addresses in 2017 and 2018, it also resulted in more than 1,300 voters signing 'supplemental poll lists' at a spring 2018 election, indicating that they had not in fact moved and were wrongly flagged.

Brater et al., Purges: A Growing Threat to the Right to Vote at 9 (2019), https://www.brennancenter.org/sites/default/files/2019-08/Report_Purges_Growing_Threat.pdf (last accessed April 5, 2024).

46.    Marc Meredith, an associate professor in the Department of Political Science at the University of Pennsylvania, stated,

> While ERIC is usually correct, sometimes they're wrong, and it turns out they're more likely to be wrong in the case where the registrant is a racial or ethnic minority as opposed to a white registrant[.]

Kristen de Groot, Penn Today, The racial burden of cleaning voter rolls (Feb. 24, 2021), https://penntoday.upenn.edu/news/racial-burden-cleaning-voter-rolls (last accessed April 5, 2024).

47.    A Yale University-led study of ERIC in Wisconsin found that at least 4% of people listed as suspected 'movers' cast ballots in 2018 elections using addresses that were wrongly flagged as out of date. Minority voters were twice as likely as white voters to cast their

ballot with their original address of registration after the state marked them as having moved, the study showed.

Yale University, Study uncovers flaws in process for maintaining state voter rolls (Feb. 26, 2021), https://phys.org/news/2021-02-uncovers-flaws-state-voter.html  (last accessed April 3, 2024).

48.     The Yale study's lead author, political scientist Gregory A. Huber, stated,

> **The process of maintaining states' voter-registration files cries out for greater transparency[.]** … Our work shows that significant numbers of people are at risk of being disenfranchised, particularly those from minority groups. Unfortunately, we don't know enough about the process used to prune voter rolls nationwide to understand why mistakes occur and how to prevent them.

*Id*. (emphasis added).

49.     ERIC periodically issues reports correcting inaccurate information contained in prior reports.  Prior reports are occasionally corrected because they erroneously identified living registrants as deceased.

***Wisconsin's NVRA Exemption Is Invalid with Respect to the NVRA's Public Disclosure Provision***

The Voting Rights Act, *Shelby County* and Equal State Sovereignty

50.     In 1965, Congress passed the Voting Rights Act ("VRA") in 1965, 52 U.S.C. § 10101 *et seq*., to combat racial discrimination in voting.

51.     Section 5 of the VRA required States to obtain federal permission before enacting any law related to voting, and Section 4 of the VRA applied that requirement only to some States, those that had used a forbidden test or device in November 1964, and had less than 50% voter registration or turnout in the 1964 Presidential election, 52 U.S.C. § 10303(b).

52.     In 1966, the Supreme Court upheld Section 4 against a constitutional challenge, explaining that "exceptional conditions can justify legislative measures not otherwise appropriate." *South Carolina v. Katzenbach*, 383 U.S. 301, 334 (1966).

53.    VRA Section 4's coverage formula was not static. The VRA contained a provision allowing covered states to "bailout" of Section 5's federal preclearance requirement by seeking a declaratory judgment from a three-judge panel in United States District Court for the District of Columbia. *See* 52 U.S.C. § 10303(a)(1).

54.    The VRA also contained a provision under which states could be "bailed in" to the federal preclearance requirement for committing violations of the Fourteenth or Fifteenth Amendments. 52 U.S.C. § 10302(c).

55.    In 2009, the Supreme Court of the United States considered an action brought by a Texas municipal utility district seeking relief from Section 5's federal preclearance requirement under the VRA's "bailout" provision. *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193 (2009) ("*NWAMUDNO*"). Alternatively, the municipal utility district challenged the constitutionality of VRA Section 5. *Id*. at 196.

56.    The Supreme Court observed that the VRA "differentiates between the States, despite our historic tradition that all the States enjoy 'equal sovereignty.'" *NWAMUDNO*, 557 U.S. at 203 (citing *United States v. Louisiana*, 363 U.S. 1, 16 (1960)).

57.    While "[d]istinctions can be justified in some cases," the Supreme Court acknowledged, "a departure from the fundamental principle of equal sovereignty requires a showing that a statute's disparate geographic coverage is sufficiently related to the problem that it targets." *Id*. at 203.

58.    The Court explained that while the conditions that justified the VRA had "improved," "[p]ast success alone, however, is not adequate justification to retain the preclearance requirements." *Id*. at 202. "[T]he Act imposes current burdens and must be justified by current

needs." *Id*. at 203. Ultimately, the Supreme Court held that the utility district was eligible to seek a "bail out" under the VRA and declined to resolve the VRA's constitutionality.

59.     In *Shelby Cty. v. Holder*, 570 U.S. 529 (2013), the Supreme Court held that VRA Section 4 is unconstitutional. In doing so, the Court reaffirmed "the principle that all States enjoy equal sovereignty[.]" *Id*. at 535; *see also id*. at 544 ("[T]he constitutional equality of the States is essential to the harmonious operation of the scheme upon which the Republic was organized.") (citations and quotations omitted).

60.     With respect to a law that treats the states differently, "a statute's 'current burdens' must be justified by 'current needs,' and any 'disparate geographic coverage' must be 'sufficiently related to the problem that it targets.'" *Id*. at 550-51.

61.     Further, "Congress—if it is to divide the States—must identify those jurisdictions to be singled out on a basis that makes sense in light of current conditions. It cannot rely simply on the past." *Id*. at 553.

62.     Unlike the VRA, the NVRA is static. It contains no "bail in" or "bailout" provision.

63.     The NVRA Exemption departs from the principle of equal state sovereignty because it treats six states—including Wisconsin—differently than other states.

64.     Wisconsin's exemption from the NVRA's Public Records Provision did not "make sense" in 1994 and it certainly does not "make sense in light of current conditions." *Id. See Shelby Cty.*, 570 U.S. at 553.

65.     Wisconsin, like 48 other states, currently requires voter registration.

66.     Wisconsin also currently conducts a robust and multi-faceted voter list maintenance program, which is designed to grant, preserve, and remove voting rights.

67.   Under current conditions, Congress's findings (52 U.S.C. § 20501(a)) and the NVRA's purposes (52 U.S.C. § 20501(b)) are equally relevant in Wisconsin.

68.   Under current conditions, the "problems" that the NVRA "targets" are equally prevalent in Wisconsin.

69.   Because the NVRA's Public Disclosure Provision exists to further the NVRA's purposes and aid in its enforcement, the Public Disclosure Provision is equally relevant in Wisconsin.

70.   Wisconsin's offering Election Day Registration has not relieved Wisconsin of the need—or desire—to do the very same things Congress designed the NVRA to do: protect the fundamental right to vote, remove unfair registration laws, protect the integrity of the electoral process, and maintain accurate voter roll. *See supra* ¶¶ 11-12.

71.   In fact, Wisconsin has enacted specific voter list maintenance procedures to address Election Day Registration. Wis. Stat. Ann. § 6.56(3).

72.   Furthermore, nineteen (19) other states and the District of Columbia have implemented Election Day Registration. *See* https://www.ncsl.org/elections-and-campaigns/same-day-voter-registration (last accessed March 11, 2024). Thirteen states of those nineteen states and the District of Columbia are subject to the NVRA's Public Disclosure Provision, while Wisconsin, and five other states are not.

73.   The NVRA's "disparate geographic coverage" is thus not "sufficiently related to the problem that it targets," and does not "make[] sense in light of current conditions." *Shelby Cty.*, 570 U.S. at 551, 553.

74.   Wisconsin's exemption from the NVRA's Public Disclosure Provision violates the principle of equal state sovereignty, and it is therefore invalid.

13

75.     Maine's experience further exemplifies the irrationality of the exemption from the NVRA's Public Disclosure Provision. Maine initially qualified for the NVRA Exemption because it had implemented Election Day Registration on August 1, 1994. Maine lost its exemption when it repealed its Election Day Registration law in 2011. *See* LD 1376 (HP 1015) (2011). Although EDR was subsequently restored through the referendum process, *see* Maine Same-Day Registration Veto Referendum, Question 1 (2011)[2], Maine's NVRA Exemption was not restored.

<u>*City of Boerne* and the Requirement of Congruence and Proportionality</u>

76.     The NVRA is an exercise of Congress's constitutional authority to enforce the Fourteenth and Fifteenth Amendments. U.S. Const. Amend. 14, Sec. 5; U.S. Const. Amend. 15, Sec. 2; *see also Condon v. Reno*, 913 F. Supp. 946, 962 (D.S.C. 1995) ("The legislative history and the text of the NVRA are clear that Congress was utilizing its power to enforce the equal protection guarantees of the Fourteenth Amendment."); *see also id*. at 967 ("Congress had a sound basis on which to conclude that a federal voter registration law was an appropriate means of furthering the protections of the Fourteenth and Fifteenth Amendments.").

77.     In *City of Boerne v. Flores*, 521 U.S. 507 (1997), the Supreme Court held that when Congress enforces the Fourteenth Amendment through legislation, "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id*. at 520.

78.     The NVRA's legislative history indicates that with the NVRA, Congress intended to "reduce … obstacles to voting to the absolute minimum while maintaining the integrity of the electoral process." H. Rep. No. 9, 103rd Cong., St. Sess. 3, reprinted in 1993 U.S. Code, Cong. & Admin. News, 105, 106-07.

---

[2] https://ballotpedia.org/Maine_Same-Day_Registration_Veto_Referendum,_Question_1_(2011)#cite_note-ballot-1 (last accessed April 17, 2024).

79.     The NVRA's findings and purposes reflect this goal. *See* 52 U.S.C. § 20501(a)-(b).

80.     The NVRA's goal of maintaining accurate and current voter registration rolls, 52 U.S.C. § 20501(b)(4), is both an end unto itself, and a means to achieve Congress's other purposes, including eliminating "discriminatory and unfair registration laws," 52 U.S.C. § 20501(a)(3), "increas[ing] the number of eligible citizens who register to vote," 52 U.S.C. § 20501(b)(1), and, "protect[ing] the integrity of the electoral process," 52 U.S.C. § 20501(b)(3).

81.     The NVRA's Public Disclosure Provision helps achieve Congress's objectives by allowing the public to monitor the government's activities with respect to voter registration and the electoral process, and where necessary, enforce the NVRA's mandates through the NVRA's private right of action, 52 U.S.C. § 20510(b).

82.     The NVRA Exemption lacks the required "congruence and proportionality" because it exempts states like Wisconsin, where the injuries Congress sought to remedy are equally prevalent and Congress's transparency and oversight objectives are equally relevant.

83.     Wisconsin's exemption from the NVRA's Public Disclosure Provision violates the principle of congruence and proportionality, and it is therefore invalid.

***Wisconsin Law Concerning Requests for the Official Registration List***

84.     Wisconsin law requires WEC to "compile and maintain electronically an official registration list," which includes, for each registrant, data such as name, address, and date of birth. Wis. Stat. § 6.36(1)(a) (hereafter "Official Registration List").

85.     WEC is "responsible for the design and maintenance of the [O]fficial [R]egistration [L]ist under s. 6.36." Wis. Stat. § 5.05(15).

86.     The Official Registration List is open to public inspection by any person, except that the public may not view certain information, including date of birth information. Wis. Stat. § 6.36(1)(b)(1)(a).

87.     WEC reiterates on its website, "The WEC will never provide date of birth information (including age or age range)[.]" WEC, Badger Voters – FAQs, "What data is not available?", https://badgervoters.wi.gov/faq (last accessed April 6, 2024).

88.     WEC is required to "establish by rule the fee for obtaining a copy of the official registration list, or a portion of the list[.]" Wis. Stat. § 6.36(6).

89.     "The charge for reports in electronic format is a $25 base fee per report; plus $5 for the first 1,000 voter registration data records, or up to 1,000 voter registration data records; plus $5 for each additional 1,000 voter registration data records, rounded to the nearest thousand. The maximum charge for an electronic report is $12,500." Wis. Adm. Code, EL 3.50(4) (hereafter, the "Data Fees").

90.     The State of Wisconsin had 3,435,197 active registered voters on March 1, 2024. https://elections.wi.gov/resources/statistics/march-1-2024-voter-registration-statistics (last accessed April 6, 2024). The cost of receiving an electronic copy of the complete Official Registration List is, therefore, the maximum charge of $12,500.

91.     WEC sells the Official Registration List, and portions thereof, to the public through its website— https://badgervoters.wi.gov.

92.     In written testimony before Wisconsin's Assembly Committee on Campaigns and Elections, WEC's Technology Director explained

> I'd be the first to admit that **$12,500 is a lot of money**. As was noted last week, the requirement to charge a fee is in statute and the rates applied are in the administrative code. **Wisconsin's data is not cheap**, but Wisconsin is one of the

16

few states to make the data readily available for near-instant downloads 24/7/365
on a public website.

Testimony of Administrator Meagan Wolfe and Technology Director Robert Kehoe, Wisconsin

Elections Commission, Assembly Committee on Campaigns and Elections, Feb. 16, 2021,

https://legis.wisconsin.gov/assembly/22/brandtjen/media/uzado1pw/testimony-of-meagan-wolfe-
and-robert-kehoe.pdf (last accessed April 6, 2024) (emphasis added).

93.     Wisconsin charges candidates a different price than the public for Official

Registration List data. A candidate may receive "one copy of the current registration list for those

areas for which he or she is a candidate for a fee **not to exceed the cost of reproduction**." Wis.

Stat. § 6.45(2) (emphasis added).

*The Official Registration List, Including Data of Birth Information, is Subject to Disclosure
Under the NVRA's Public Disclosure Provision*

94.     Courts universally agree that a state's voter roll is subject to disclosure under the

NVRA's Public Disclosure Provision. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th at 49

(*quoting* 52 U.S.C. § 20507(i)(1) (Maine's Voter File is a 'record[] concerning the implementation

of programs and activities conducted for the purpose of ensuring the accuracy and currency of

official lists of eligible voters' and is thus subject to disclosure under Section 8(i)(1).") *Pub.

Interest Legal Found. v. Matthews*, 589 F. Supp. 3d 932, 943-44 (C.D. Ill. 2022) ("Defendants

acted in violation of the Public Disclosure Provision of the NVRA when Defendants refused to

make available for viewing and photocopying the full statewide voter registration list."); *Judicial

Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 438-442, 446 (D. Md. 2019) (holding, under the

NVRA, that plaintiff "is entitled to the voter registration list for [a] County that includes fields

indicating name, home address, most recent voter activity, and active or inactive status"); *True the

Vote v. Hosemann*, 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014) ("[T]he Voter Roll is a 'record' and

17

is the 'official list[] of eligible voters' under the NVRA Public Disclosure Provision."); *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *13 (S.D. Fla. Mar. 30, 2018) ("[E]lection officials must provide full public access to all records related to their list maintenance activities, including their voter rolls."); *Voter Reference Found., LLC v. Torrez*, No. CIV 22-0222 JB/KK, 2024 U.S. Dist. LEXIS 58803, at *436 (D.N.M. Mar. 29, 2024) (quoting 52 U.S.C. § 20507(i)(1)) ("As is discussed above, the Court, concurring with all other federal courts that have considered this issue, concludes that a current list of a State's registered voters -- the core voter roll -- is a 'record[] concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'"); *see also Ill. Conservative Union v. Illinois*, No. 20 C 5542, 2021 U.S. Dist. LEXIS 102543, at *15 (N.D. Ill. June 1, 2021) (holding, at the pleading stage, that statewide voter roll "falls within Section 8(i)'s disclosure provision").

95.     Wisconsin's Official Registration List is likewise subject to disclosure under the NVRA's Public Disclosure Provision, because, *inter alia*, it reflects and is the end product of Wisconsin's voter list maintenance activities. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th at 47 ("The Voter File can thus be characterized as the output and end result of such activities. In this way, the Voter File plainly relates to the carrying out of Maine's voter list registration and maintenance activities and is thereby subject to disclosure under Section 8(i)(1).").

96.     Date-of-birth information (which includes the requested year-of-birth information) is subsumed by the NVRA's use of the phrase "all records," 52 U.S.C. § 20507(i)(1), and date-of-birth information in Wisconsin's Official Registration List is therefore subject to disclosure under the NVRA. *See Judicial Watch, Inc. v. Lamone*, 455 F. Supp. 3d 209 (D. Md. 2020) (holding that plaintiff is entitled to date-of-birth information under NVRA).

***The NVRA Limits Permissible Costs to Photocopying Charges, which Must be Reasonable***

97.     Congress addressed the cost of public records in the NVRA text, limiting those costs to "photocopying" charges, which must also be "reasonable." 52 U.S.C. § 20507(i)(1).

98.     Unlike other federal statutes, such as the Freedom of Information Act, *see* 5 U.S.C. § 552(a)(4)(A)(i), the NVRA has no express language permitting a state agency to charge the requestor the costs of producing the requested records.

99.     The United States District Court for the Northern District of Georgia has explained that "[t]he absence of a cost provision in the public inspection provision of the NVRA—and its inclusion in other record disclosure laws—suggests Congress intended States to shoulder the burden" of producing records. *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1351 (N.D. Ga. 2016).

100.    Wisconsin may not charge requestors for costs the NVRA does not authorize.

***The Foundation Requested Records Pursuant to the Public Disclosure Provision***

101.    On January 24, 2024, pursuant to the NVRA's Public Disclosure Provision, the Foundation made the following requests from WEC:

1. A current or most updated copy (.CSV or .TXT formats) of the complete Wisconsin Official Registration List as described in Wis. Stat. § 6.36 containing all data fields except for operator's license and/or last-four of Social Security number (Wis. Stat. § 6.36(1)(a)(5)). Please include year of birth as opposed to the full birth date for each registrant (Wis. Stat. § 6.36(1)(a)(2)) ("Official Registration List").

2. "Deceased Reports" received from ERIC during the years 2020, 2021, 2022, and 2023 ("ERIC Reports").

Exhibit A at 1-2 (hereafter, the "Request").

102.    The Foundation offered to pay a reproduction fee for the Official Registration List not to exceed cost of reproduction. *See* Wis. Stat. § 6.45(2) (describing fee imposed on candidates). Exhibit A at 1.

***Defendant Is Refusing to Make the Official Registration List Available to the Foundation Under the NVRA's Terms***

103.    On February 13, 2024, WEC responded to the Request through counsel, explaining, "Wisconsin is exempt from the NVRA under 52 U.S.C. s. 20503(b)(2), however, we are processing your request under Wisconsin's public records law." Exhibit B (the "Response").

104.    WEC's Response continued, "Regarding your request for the full registration list, Wisconsin voter data is available through an online portal at https://badgervoters.wi.gov. Wisconsin law requires the Commission to charge a fee for access to voter registration data and makes no exceptions for journalists, non-profits, academics, or any other group. *See* Wis. Stat. § 6.36(6) and Wis. Admin Code § EL 3.50." Exhibit B.

105.    WEC's Response continued, "Most requests may be fulfilled immediately through a self-service process.  Voter lists and custom requests have a base fee of $25. Additionally, there is a fee of $5 for every thousand records returned by the request, rounded up to a thousand if less than one thousand, or to the nearest thousand if more. Self-service request fees are capped at $12,500." Exhibit B.

106.    On February 14, 2024, the Foundation notified Administrator Wolfe that she and WEC are in violation of the NVRA for failure to permit inspection and reproduction of voter list maintenance records as required by 52 U.S.C. § 20507(i)(1). Exhibit C (hereafter, the "Notice Letter").

107.    The Notice Letter notified Administrator Wolfe that Wisconsin's statutory exemption from the NVRA's Public Disclosure Provision is no longer valid. *See* Exhibit C at 2-3.

108.    The Notice Letter notified Administrator Wolfe that Wisconsin's Official Registration List, including date-of-birth information, is a record subject to disclosure under the NVRA. Exhibit C at 3.

109.    The Notice Letter notified Administrator Wolfe that Wisconsin's Data Fees for Official Registration List data violates the NVRA because "Wisconsin's fees are not exclusively related to photocopying and are not reasonable or tethered to the actual cost Wisconsin incurs in producing the Official Registration List." Exhibit C at 4.

110.    The Notice Letter also notified Administrator Wolfe that "Wisconsin's fee structure discriminates against members of the public, including the Foundation" because "[w]hile the Foundation must pay $12,500 to obtain the Official Registration List, candidates must pay only the 'cost of reproduction.'" Exhibit C at 4 (quoting Wis. Stat. Ann. § 6.45(2)).

111.    The Notice Letter also notified Administrator Wolfe that the NVRA preempts conflicting Wisconsin laws. Exhibit C at 4.

112.    The Notice Letter also notified Administrator Wolfe that litigation may commence against her if the violations about which she was notified were not cured within 20 days of his receipt of the Notice Letter. Exhibit C at 4.

113.    The Notice Letter also explained how Administrator Wolfe could cure the violation described in the Notice Letter. Exhibit C at 5.

114.    By sending the Notice Letter to Administrator Wolfe, Wisconsin's chief election official, Wis. Stat. § 5.05(3g), the Foundation complied with the NVRA's pre-litigation notice requirements. *See* 52 U.S.C. § 20510(b)(1)-(2).

115.    On February 14, 2024, Administrator Wolfe, perhaps inadvertently, included the Foundation on an email concerning the Notice Letter, which read, "Who wants to break it to him we are NVRA exempt?" Administrator Wolfe's email confirms her receipt of the Notice Letter.

116.    On February 15, 2024, WEC confirmed that it refuses to process the Foundation's Request under the NVRA.

21

117. The February 15, 2024 email reads, "Wisconsin is exempt from the NVRA and the Wisconsin Elections Commission will continue process requests for voter registration data under Wis. Stat. § 6.36(6) and Wis. Admin Code § EL 3.50." Exhibit D.

118. WEC is thus denying the Foundation's request for year of birth information and conditioning disclosure on payment of $12,500.

### Defendant Has Not Cured the NVRA Violation

119. The NVRA provides a curative period for offending parties. 52 U.S.C. § 20510(b). "The apparent purpose of the notice provision is to allow those violating the NVRA the opportunity to attempt compliance with its mandates before facing litigation." *Ga. State Conference of the NAACP v. Kemp*, 841 F. Supp. 2d 1320, 1335 (N.D. Ga. 2012).

120. In this case, the curative period is 20 days because the violation occurred within 120 days of Wisconsin's April 2, 2024, Presidential Preference Primary, an election for federal office. *See* 52 U.S.C. § 20510(b)(2).

121. The Foundation sent the Notice Letter, and the Defendant received it on February 14, 2024.

122. Administrator Wolfe's curative period ended on March 5, 2024.

123. Administrator Wolfe did not cure her violation by March 5, 2024, and has not cured her violation as of the day this action was filed.

124. Therefore, this action is ripe.

### Defendant's Actions are Causing Concrete Harm to the Foundation

125. The requested records are records within the scope of the NVRA's Public Disclosure Provision.

126.    The Public Disclosure Provision authorizes and entitles the Foundation to inspect and duplicate the requested records in electronic format.

127.    Defendant's violations of the NVRA are causing the Foundation to suffer a concrete informational injury because the Foundation does not have records and information to which it is entitled under federal law. *FEC v. Akins*, 524 U.S. 11, 21 (1998) ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute.").

128.    This "informational injury" is causing the Foundation to suffer additional, adverse consequences.

129.    First, the Foundation cannot evaluate and scrutinize Wisconsin's voter list maintenance activities.

130.    The Foundation gathers information about the state of the voter rolls across the nation to assess the accuracy and currency of the rolls and whether officials are complying with state and federal voter list maintenance standards, as well as other best practices.

131.    The Foundation will use the requested records to study, analyze, evaluate, and scrutinize Wisconsin's voter list maintenance activities and Wisconsin's compliance with state and federal law, and other best practices.

132.    The Foundation cannot do so because WEC refuses to produce the requested records under the NVRA's terms.

133.    WEC admits that effective and accurate public evaluation of its voter list maintenance activities is impossible because the public does not have access to date of birth information. On its website, WEC explains, "Third parties do not have access to birth date data or to the current registration list. As a result, they falsely identify non-duplicates and also flag records

previously reported to clerks through the Registration List Alert process." WEC, Emails from Third Parties, Oct. 3, 2022, https://elections.wi.gov/memo/emails-third-parties (last accessed April 6, 2024).

134.    Second, WEC's actions are impairing the Foundation's educational programming.

135.    The Foundation uses public records and data to educate the public and election officials about numerous circumstances, including the state of their own voter rolls.

136.    The Foundation uses public records and data to educate members of Congress about numerous circumstances, including the effectiveness of federal laws such as the NVRA, HAVA, and the Voting Rights Act, possible amendments to these federal laws, and state officials' compliance with these federal laws.

137.    The Foundation uses records and data to produce and disseminate reports, articles, blog and social media posts, and newsletters to engage in education and public advocacy about pressing election-related matters.

138.    The Foundation's ability to perform these educational functions is impaired because WEC is refusing to produce the requested records under the NVRA's terms.

139.    Third, WEC's actions are impairing the Foundation's institutional knowledge upon which it depends for its programming.

140.    The Foundation must continually keep its institutional knowledge current and accurate so that it can operate efficiently, timely, and effectively, including for the purposes that Congress intended under the NVRA, such as oversight, remedial programs, law enforcement, and education.

141.    The Foundation depends on accurate and current institutional knowledge to know where, when, and how to deploy its resources.

142.     The Foundation's institutional knowledge—and consequently its programming—is impaired because WEC refuses to produce the requested records under the NVRA's terms.

143.     Fourth, WEC's actions are harming the Foundation by forcing it to re-prioritize its resources to the detriment of other programmatic priorities.

144.     The Foundation must expend additional resources and staff to counteract WEC's actions, which limits the Foundation's ability to fund some of its other programming, which includes research, analysis, remedial programming, and law enforcement.

145.     The Foundation intends to request similar records from WEC in the future.

146.     The Foundation will continue to be injured by NVRA violations unless and until the Defendant is enjoined from continuing to violate the law.

147.     The Foundation is a person aggrieved by a violation of the NVRA, as set forth in 52 U.S.C. § 20510(b)(1).

**COUNT I**
**Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)**
**Denial of Access – Official Registration List**

148.     The Foundation realleges the preceding paragraphs as if fully stated herein.

149.     Wisconsin's NVRA Exemption is invalid with respect to the NVRA's Public Disclosure Provision.

150.     The record described in Wis. Stat. § 6.36(1)(a)—otherwise known as the Official Registration List—is a record subject to disclosure under the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i)(1).

151.     The Official Registration List is in the Defendant's possession, custody, and control.

25

152.    The Foundation requested an electronic copy of the Official Registration List from WEC, but WEC has not produced it.

153.    The NVRA's Public Disclosure Provision requires Wisconsin to produce the Official Registration List to the Foundation at a cost the NVRA authorizes.

154.    Defendant is conditioning the Foundation's federal right to receive the Official Registration List on payment of unlawful costs pursuant to Wis. Stat. § 6.36(6) and Wis. Adm. Code, EL 3.50(4).

155.    By conditioning the Foundation's federal inspection rights on payment of unlawful costs, Defendant is functionally denying the Foundation's request.

156.    Defendant's functional denial of the Foundation's request violates the NVRA.

157.    As described herein, Defendant's actions are causing concrete harm to the Foundation.

**COUNT II**
**Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)**
**Denial of Access – Year of Birth Information**

158.    The Foundation realleges the preceding paragraphs as if fully stated herein.

159.    Wisconsin's NVRA Exemption is invalid with respect to the NVRA's Public Disclosure Provision.

160.    Year of birth information in the Official Registration List is a record subject to disclosure under the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i).

161.    Year of birth information is in the Defendant's possession, custody, and control.

162.    The Foundation requested year of birth information from the Official Registration List, but the WEC has not produced it.

163.    Defendant's denial of year of birth information violates the NVRA.

164.    As described herein, Defendant's actions are causing concrete harm to the Foundation.

165.    Wis. Stat. § 6.36(1)(b)(1)(a) makes year of birth information confidential and not subject to public inspection or disclosure.

166.    Wis. Stat. § 6.36(1)(b)(1)(a) invades a field occupied by Congress (i.e., voter list maintenance records), and poses obstacles to Congress's objectives under the NVRA.

167.    Wis. Stat. § 6.36(1)(b)(1)(a)—and any similar statute, regulation, or policy—is therefore preempted and unenforceable under the Supremacy Clause and the Elections Clause of the Constitution of the United States.

### COUNT III
### Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)
### Unlawful Costs

168.    The Foundation realleges the preceding paragraphs as if fully stated herein.

169.    The NVRA's Public Disclosure Provision permits states to charge requestors only reasonable photocopying costs to obtain records within the NVRA's scope. 52 U.S.C. § 20507(i)(1).

170.    Pursuant to the Data Fees, Defendant requires requestors to pay costs not related to photocopying to obtain records within the NVRA's scope, even in electronic format.

171.    Pursuant to the Data Fees, Defendant requires requestors to pay unreasonable costs to obtain records within the NVRA's scope, even in electronic format.

172.    Pursuant to the Data Fees, Defendant imposes costs based on the number of records requested, even in electronic format.

173.    Defendant imposes the Data Fees each time a requestor requests records, including the Official Registration List.

174.    Defendant's imposition of the Data Fees conflicts with the NVRA's plain text.

175.   For example, Defendant's imposition of $12,500 to obtain the Official Registration List in electronic format, violates the NVRA because such a fee is neither reasonable nor related to photocopying.

176.   As described herein, Defendant's actions are causing concrete harm to the Foundation.

177.   The Data Fees invade a field occupied by Congress (i.e., voter list maintenance records), and poses obstacles to Congress's objectives under the NVRA.

178.   Wis. Stat. § 6.36(6) and Wis. Adm. Code, EL 3.50(4)—and any similar statute, regulation, or policy—are therefore preempted and unenforceable under the Supremacy Clause and the Elections Clause of the Constitution of the United States.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment:

1.   Declaring Wisconsin's NVRA Exemption, 52 U.S.C. § 20503(b), invalid with respect to the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i)(1).

2.   Declaring that Defendant is in violation of NVRA Section 8(i) for refusing to permit inspection and reproduction of the Official Registration List under the NVRA's terms.

3.   Declaring that NVRA Section 8(i) of the NVRA preempts and supersedes Wis. Stat. § 6.36(1)(b)(1)(a) and any similar statute, regulation, or policy that prevents the Foundation from inspecting and reproducing year-of-birth information.

4.   Declaring that NVRA Section 8(i) preempts and supersedes Wis. Stat. § 6.36(6), Wis. Adm. Code, EL 3.50(4), and any similar statute, regulation, or policy that conditions access to voter list maintenance records on payment of costs the NVRA does not authorize.

5. Ordering Defendant to produce the Official Registration List to the Foundation in electronic format, with year-of-birth information, and without first paying costs the NVRA does not authorize.

6. Permanently enjoining Defendant from denying the Foundation's requests for the Official Registration List or other similar data in the future or conditioning access to the same on payment of unlawful costs.

7. Ordering the Defendant to pay the Foundation's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c); and,

8. Granting the Foundation further relief that this Court deems just and proper.

Dated: April 29, 2024.

For the Plaintiff Public Interest Legal Foundation:

CRAMER MULTHAUF LLP
Attorneys for Plaintiff,

BY: *Electronically signed by Matthew M. Fernholz*
MATTHEW M. FERNHOLZ
(State Bar No. 1065765)

CRAMER MULTHAUF LLP
1601 East Racine Avenue • Suite 200
P.O. Box 558
Waukesha, WI 53187-0558
(262) 542-4278
mmf@cmlawgroup.com

    /s/ Noel H. Johnson
Noel H. Johnson* (Wisconsin Bar #1068004)
Kaylan L. Phillips* (Indiana Bar #30405-84)
Public Interest Legal Foundation, Inc.
107 S. West Street, Suite 700
Alexandria, VA 22314
Tel. (703) 745-5870
njohnson@PublicInterestLegal.org

29

kphillips@PublicInterestLegal.org
*\* Motion for admission pro hac vice forthcoming*

*Attorneys for Plaintiff Public Interest Legal
Foundation*