IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PUBLIC INTEREST LEGAL
FOUNDATION, INC.,

       Plaintiff,

    v.                          Case No. 24-CV-285

MEAGAN WOLFE, in her official
capacity as the Administrator of the
Wisconsin Elections Commission,

       Defendant.

## BRIEF IN SUPPORT OF DEFENDANT MEAGAN WOLFE'S MOTION TO DISMISS

## INTRODUCTION

Plaintiff Public Interest Legal Foundation seeks to force the Wisconsin Elections Commission Administrator to release Wisconsin's "official registration list" for voters in a certain way. The Foundation seeks records with birth years included and with a waiver of Wisconsin's statutory fees, which, according to the Foundation, the National Voter Registration Act (NVRA) sometimes requires of states.[1] But there is a significant barrier to this effort: the NVRA exempts Wisconsin from its mandates, including the public disclosure mandate.

---

[1] It is not conceded that the Foundation correctly describes what the NVRA requires. For instance, a case cited by the Foundation states that "Congress here did not mandate disclosure of SSNs or birthdates." *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 734 (S.D. Miss. 2014); (Dkt. 1 ¶ 19.) However, this issue is not relevant to the motion to dismiss and is therefore not discussed further.

The Foundation's complaint does not overcome that barrier. It invokes a statute that expressly does not apply, and it identifies no other source of a statutory right. And there is no constitutional right to access governmental records. The Foundation needs one or the other—a statutory or constitutional right in which to ground a claim—or else it cannot come to court. For this reason, alone, the case should be dismissed.

Even putting aside that overarching problem, the Foundation's own premise does not hold up to scrutiny. It contends that the NVRA's exemption for Wisconsin somehow is rendered unconstitutional by two U.S. Supreme Court decisions about completely different subjects: *Shelby County v. Holder*, 570 U.S. 529 (2013), which is about burdens imposed by the Voting Rights Act's preclearance requirements, and *City of Boerne v. Flores*, 521 U.S. 507 (1997), which is a Religious Freedom Restoration Act case about the limits of Congress's power to substantively change what the Fourteenth Amendment means. Neither case is about the NVRA, access to information, or anything else remotely on point. Even in the most abstract of senses, both cases are about something much different: congressional overreach and burdens on the states. In contrast, the Foundation seeks to expand a federal law to impose additional burdens on Wisconsin. That is the opposite of what these cases stand for.

This lawsuit should be dismissed because the complaint is deficient on multiple levels.[2]

## BACKGROUND

### I.   Background on the NVRA.

The NVRA "is designed to make it easier to register to vote in federal elections." *Ass'n of Cmty. Organizations for Reform Now (ACORN) v. Edgar*, 56 F.3d 791, 792 (7th Cir. 1995). Its purpose is documented in the NVRA itself, which states that a primary aim is to increase the number of registered voters. Its purposes are:

> (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;
>
> (2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;
>
> (3) to protect the integrity of the electoral process; and
>
> (4) to ensure that accurate and current voter registration rolls are maintained.

52 U.S.C. § 20501(b).

---

[2] The Foundation's pleading draws "into question the constitutionality of a federal . . . statute," and so under the Federal Rules of Civil Procedure Rule 5.1, it must "file a notice of constitutional question" and serve notice on the U.S. Attorney General. The Rule also provides that the Court must certify to the Attorney General that a statute's constitutionality has been questioned. It does not appear that the Foundation has undertaken its notice obligations. The consequence is that the Court "may not enter a final judgment holding the statute unconstitutional," but it may "reject the constitutional challenge."

To carry out these purposes, the NVRA imposes requirements on some states that include, for example, that a driver's license application also serve as an application for voter registration, 52 U.S.C. § 20504(a)(1); that there must be an opportunity to register at offices that provide public assistance, 52 U.S.C. § 20506(a); and that states provide for mail registration, 52 U.S.C. § 20505. The NVRA also provides that a name of a registrant may not be removed unless at the request of the registrant, due to criminal conviction or mental incapacity, or due to death or a change in residence, with certain restrictions. 52 U.S.C. § 20507(a)(2)–(4). It also contains mandates related to maintenance of the voter registration rolls for elections for federal office. 52 U.S.C. § 20507(b).

Most relevant here, the NVRA provides for public disclosure of certain "voter registration activities":

> (1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1).

Lastly, and key to this lawsuit, the NVRA exempts certain states from its coverage. As relevant here, the NVRA does not apply to certain states with laws continuously in place for same-day voter registration at the polls:

This chapter does not apply to . . .

> A State in which, under law that is in effect continuously on and after August 1, 1994, or that was enacted on or prior to August 1, 1994, and by its terms is to come into effect upon the enactment of this chapter, so long as that law remains in effect, all voters in the State may register to vote at the polling place at the time of voting in a general election for Federal office.

52 U.S.C. § 20503(b)(2).

## II.   Wisconsin's same-day voter registration at the polls.

Wisconsin Stat. § 6.55(2)(a) provides for same-day voter registration at the polls, where the elector provides documentation and information to an election official that they are qualified and signs a corresponding certification. It provides, in part:

> any person who qualifies as an elector in the ward or election district where he or she desires to vote, but has not previously filed a registration form, or was registered at another location, may request permission to vote at the polling place for that ward or election district . . . .

The statute also provides that the person is to "execute a registration form" that must contain certain details relevant to voting eligibility pursuant to Wis. Stat. § 6.33:

> name; date; residence location; location of previous residence immediately before moving to current residence location; citizenship; date of birth; age; the number of a current and valid operator's license issued to the elector under ch. 343 or the last 4 digits of the elector's social security account number; whether the elector has resided within the ward or election district for the number of consecutive days specified in s. 6.02(1); whether the elector has been convicted of a felony for which he or she has not been pardoned, and if so, whether the elector is incarcerated, or on parole, probation, or extended supervision; whether the elector is disqualified on any other ground from voting; and whether the elector is currently registered to vote at any other location.

5

Wis. Stat. § 6.33(1). The form also informs the person that "[f]alsification of information on this form is punishable under Wisconsin law as a Class I felony." *Id.* The form has a "space where the clerk shall record an indication of the type of identifying document submitted by the elector as proof of residence." *Id.* The person must also sign a certification attesting that they are a qualified elector, with a qualifying residence, and have not voted yet at the election. Wis. Stat. § 6.55(2)(a).

## III.   The Foundation's complaint.

The Foundation seeks to invalidate conditions and restrictions in Wisconsin law on disclosure of voter registration roll information, such that registration information is provided according to the NVRA's disclosure provision, with birth years included, and without the imposition of costs otherwise allowed by Wisconsin statute and rule. *See* Wis. Stat. § 6.36(6); Wis. Admin. Code EL § 3.50; (Dkt. 1:25–28).

Yet, the NVRA "does not apply to states that, on August 1, 1994, . . . allowed all voters to register at the polling place on Election Day." (Dkt. 1 ¶ 20.) And Wisconsin has offered election day registration "continuously since at least August 1, 1994," making Wisconsin "except from the NVRA under 52 U.S.C. § 20503(b)(2)." (Dkt. 1 ¶ 21.)

That means, so long as the exemption is in force, Wisconsin is not required to make voter list maintenance records public under the NVRA or to

6

comply with its cost-of-production restrictions. (Dkt. 1 ¶¶ 23–24.) However, the Foundation alleges that the exemption in 52 U.S.C. § 20503(b) "is invalid with respect to the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i)(1) under the authority of *Shelby County . . . City of Boerne . . .* and the principles articulated therein." (Dkt. 1 ¶ 1.)

The Foundation seeks a declaration that the exemption in section 20503(b) is invalid, but only as to "the NVRA's Public Disclosure Provision." (Dkt. 1:28.) In turn, the Foundation seeks declarations that Defendant Wolfe violated the public disclosure provision when the Wisconsin Elections Commission did not supply the "Official Registration List" as mandated by the NVRA, and that the related Wisconsin statute and regulation are invalid to the extent they conflict with the NVRA's public disclosure provision. (Dkt. 1:28–29.) The Foundation also seeks injunctions requiring the production of the "Official Registration List" according to the NVRA and preventing denials of requests in the future. (Dkt. 1:29.)

## LEGAL STANDARDS

On a motion to dismiss, the Court "accept[s] the well-pleaded facts in the complaint as true and draw[s] all reasonable inferences in the plaintiff's favor." *Burger v. County of Macon*, 942 F.3d 372, 374 (7th Cir. 2019). However, the Court is not "bound to accept legal conclusions as true." *Id.*

"[F]ederal statutes enjoy a strong presumption of constitutionality." *In re Search of Off. of Tylman*, 245 F.3d 978, 981 (7th Cir. 2001). "Striking down an Act of Congress is the 'gravest and most delicate duty'" that a court performs and is not done "lightly." *Shelby County*, 570 U.S. at 556 (citation omitted).

## ARGUMENT

## I. The Foundation pleads no statutory or constitutional right to voter registration information; "equal sovereignty" does not fill that gap.

The Foundation's complaint is flawed on a basic level—whether viewed in terms of a failure to state a claim or standing. It points to no underlying legal right, either constitutional or statutory, that might support a claim.

It is fundamental that, "[t]o sue someone, you must have a cause of action. And you only have a cause of action under a federal statute if the statute's text provides you one." *Keen v. Helson*, 930 F.3d 799, 800 (6th Cir. 2019). More generally, it is a given that a plaintiff must have a "cause of action giving a plaintiff the right to sue over a defendant's legal infraction" "[t]o sue in federal court." *Dinerstein v. Google*, LLC, 73 F.4th 502, 519 (7th Cir. 2023). The present scenario also can be framed in terms of standing: "the Supreme Court's standing doctrine requires litigants to establish an injury to an interest 'that the law protects when it is wrongfully invaded.'" *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) (emphasis omitted) (citation omitted); *see also United States v. Hallinan*, 75 F.4th 148, 151 (3d Cir. 2023) ("To sue in

federal court, a plaintiff must have both constitutional standing and a cause of action.").[3]

Here, the Foundation's complaint does not identify any statutory or constitutional provision supporting its claims—it has no cognizable cause of action. It likewise points to nothing that the "law protects" vis-à-vis the Foundation and Wisconsin's records, meaning it could have suffered no injury to something protected by law.

To illustrate, the Foundation asserts that it is entitled to information pursuant to a statute, the NVRA, but that statute exempts Wisconsin. *See* 52 U.S.C. § 20503(b)(2); (Dkt. 1 ¶¶ 23–24). The Foundation thus is seeking something under a statute that says the Foundation is not entitled to it. The Foundation purports to bring its claim under 52 U.S.C. § 20510(b), (Dkt. 1 ¶ 2), but this provision provides that "[a] person who is aggrieved by a violation of this chapter," 52 U.S.C. § 20510(b)(1), "may bring a civil action in an appropriate district court for declaratory and injunctive relief with respect to the violation." 52 U.S.C. § 20510(b)(2). Here, there is no violation of "this

---

[3] As the Seventh Circuit has observed, the U.S. Supreme Court in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021), "emphasized the distinction between (1) the cause of action giving a plaintiff the right to sue over a defendant's legal infraction and (2) the injury, if any, that he suffered as a result." *Dinerstein v. Google, LLC*, 73 F.4th 502, 519 (7th Cir. 2023). The Court's point was that, just because a statutory cause of action is created by Congress, it doesn't automatically follow that there is an Article III injury in fact. Here, the Foundation's complaint is deficient under either framing: there is no "injury in law" and, necessarily, no injury to a legally protected interest. *See TransUnion LLC*, 594 U.S. at 427.

chapter" (the NVRA) because Wisconsin is exempt under the statute's express language.

The Foundation also cites the declaratory judgment statute, 28 U.S.C. § 2201, (Dkt. 1 ¶ 2), but that statute is procedural only and does not grant substantive rights. *See*, *e.g.*, *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 199 (2014). And it cites no other statutory source of a right to the voter registration rolls in the form it wants.

Lacking a statutory right, the Foundation would need to point to some other source of a right to come to court—namely, a constitutional one. It fails to do that, as well.

"The Constitution itself is [not] a Freedom of Information Act." *McBurney v. Young*, 569 U.S. 221, 232 (2013) (alteration in original) (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 14 (1978) (plurality opinion)). As the plurality in *Houchins* further explained, there "is no constitutional right to have access to particular government information, or to require openness from the bureaucracy." 438 U.S. at 14 (citation omitted). The Seventh Circuit recognizes this, as well. For example, in *Travis v. Reno*, 163 F.3d 1000, 1007 (7th Cir. 1998), the Seventh Circuit applied that rule to a case about the Driver's Privacy Protection Act and rejected a constitutional claim premised on a right of access to information. *See also Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 947 (7th Cir. 2015) (same, applying *Houchins* and *McBurney*). As this Court has reiterated, "withholding agency records doesn't

10

violate the Constitution." *Sherven v. Cent. Intel. Agency*, No. 23-CV-466-JDP, 2023 WL 8649897, at *1 n.1 (W.D. Wis. Dec. 14, 2023) (citing *Travis*).

In the face of this precedent, the Foundation nonetheless appears to believe that the concept of "equal sovereignty" provides it with a constitutional hook. (Dkt. 1 ¶ 59.) It's mistaken. It takes the concept from the Voting Rights Act case *Shelby County*, which concerned the obligation of certain states to obtain "preclearance" review from the federal government before making changes to voting procedures; there, "equal sovereignty" referred to "constitutional equality of the States." *Shelby County*, 570 U.S. at 544.[4]

To the extent that the Foundation is attempting to use "equal sovereignty" as a cause of action, it does not plead that as a claim. More to the point, any such effort would be misguided. The concept of "equal sovereignty" refers to "'equal sovereignty' among the States," *id.* at 544 (citation omitted), and concerns impacts on "state and local policymaking," *id.* at 545 (citation omitted). Thus, tellingly, the plaintiff in *Shelby County* was a "covered jurisdiction." *Id.* at 540.

The Foundation is not a state or local government. (Dkt. 1 ¶ 5.) It has no right of "equal sovereignty" and so that concept cannot supply its missing constitutional right. Nor could it invoke "equal sovereignty" on behalf of states because "a plaintiff generally lacks standing to assert the rights of others."

---

[4] The term also is used in *Northwest Austin Municipal Utility District No. One v. Holder*, 557 U.S. 193, 203 (2009), which addressed the same topic.

11

*Blagojevich v. Illinois*, No. 21-CV-4103, 2024 WL 1214732, at *5 (N.D. Ill. Mar. 21, 2024) (citing U.S. Supreme Court precedent). Rather, "[o]rdinarily a litigant may present only his own rights as bases of relief." *Gometz v. Henman*, 807 F.2d 113, 115 (7th Cir. 1986). In any event, the concept of "equal sovereignty" doesn't supply a constitutional right to voter records. The barrier remains: "withholding agency records doesn't violate the Constitution." *Sherven*, 2023 WL 8649897, at *1 n.1.

The Foundation lacks any statutory or constitutional right underlying this access-to-information lawsuit. Invoking "equal sovereignty" does not change that. Whether viewed as a failure to state a claim or a lack of standing, the case should be dismissed.

## II.   The Foundation's resort to *Shelby County* and *City of Boerne* is self-defeating; the cases are distinct and, if anything, support the opposite of what the Foundation attempts here.

The Foundation has pled no right that might support its lawsuit, and that failure should be dispositive. However, even if the complaint were explored further, it would make no difference. The Foundation says its lawsuit rests on applying two cases—*Shelby County* and *City of Boerne*—to the NVRA's exemption. (Dkt. 1: ¶ 1.) But to say that those cases are distinguishable would be putting it mildly. They are off point topically, and their principles about congressional overreach are directly contrary to what the Foundation seeks here.

### A.   *Shelby County* has nothing to do with the NVRA or its exemptions, nor do its principles support the Foundation's premise.

The Foundation first relies on *Shelby County v. Holder* for its assertion that Wisconsin's exemption from the NVRA is unconstitutional. (Dkt. 1 ¶ 1.) However, *Shelby County* is not about the NVRA and is not about expanding the coverage of a federal law; just the opposite.

*First*, *Shelby County* is distinct topically. It was about the Voting Rights Act and its "extraordinary" preclearance requirement for certain states. *Shelby County*, 570 U.S. at 534. It concerned requiring certain states and their subdivisions to obtain federal permission before changing voting procedures, which was "a drastic departure from basic principles of federalism." *Id.* at 535. The Court explained that "the conditions that originally justified these measures no longer characterize voting in the covered jurisdictions" and the question became whether the Act's "extraordinary measures" could still be justified; in that context, the Court asked whether its "current burdens" are "justified by current needs." *Id.* at 536 (citation omitted). In doing, the Court emphasized that the preclearance requirement was not "just like any other piece of legislation;" it was "exceptional" and "unique." *Id.* at 555.

That topic—a continued burden imposed by the Voting Rights Act and its "extraordinary" preclearance provision—has nothing remotely to do with the NVRA's exemption for Wisconsin from public disclosure of voter registration rolls. And the analysis in *Shelby County* cannot simply be

imported into the NVRA context. As the Court made clear, the preclearance at issue was "unique." At this basic level, the case is not on point and has no bearing on the NVRA's exemption.

*Second*, looking further at the "principles" in the case, as the complaint says to do, only confirms that *Shelby County* is hopelessly off point. In fact, its principles stand for the opposite of what the Foundation attempts to use them for here. Animating the Court's skepticism of the preclearance requirement was its encroachment on the "broad autonomy" afforded states in their "residual sovereignty." *Id.* at 543–44. The case was concerned with "retain[ing] sovereignty" and, in that context, the Court noted the principle of "equal sovereignty." *Id.* Restated, the Court was concerned with "federal intrusion into sensitive areas of state and local policymaking," which was an "extraordinary departure" from the normal state-federal relationship. *Id.* at 545. The Court ultimately asked whether "exceptional conditions" still existed that might justify that "extraordinary departure;" it answered no. *Id.* at 557 (citation omitted).

These principles provide no support for invalidating NVRA's exemption for Wisconsin. The exemption here is an example of congressional *restraint*: it absolves certain states from federal requirements based on same-day voter registration at the polls. *Shelby County*'s topic is just the opposite: it was concerned with imposing additional burdens on certain states and localities that encroached on traditional state sovereignty. Given this, the Foundation's

14

reliance on *Shelby County* is incoherent. The potential application of *Shelby County* to the NVRA would be to relieve the non-exempt states from the NVRA's burdens, not to impose additional burdens on states that Congress saw fit to exempt.[5] It follows that *Shelby County* offers no support for invalidating an exemption.

**B.     *City of Boerne* likewise has nothing to do with the NVRA or access to information but rather is about congressional overreach under the Fourteenth Amendment.**

As a second basis for invalidating the NVRA's exemption from public disclosure, the Foundation invokes *City of Boerne v. P.F. Flores*. (Dkt. 1 ¶ 1.) Like *Shelby County*, *City of Boerne* has nothing to say about the NVRA or access to information, and its principles again support the opposite of what the Foundation attempts here.

*First*, neither *City of Boerne*'s topic nor its constitutional setting is relevant. Rather, it concerned the Religious Freedom and Restoration Act (RFRA) and whether Congress exceeded its authority under the Fourteenth Amendment by attempting to substantively change what the Constitution required. *City of Boerne*, 521 U.S. at 511. As the Court explained, RFRA attempted to codify what was essentially a strict scrutiny standard that would

---

[5] Not that such an argument would be likely to succeed. The NVRA has been upheld as constitutional and as a proper exercise of Congress's power. *See, e.g.*, *Ass'n of Cmty. Organizations for Reform Now (ACORN) v. Edgar*, 56 F.3d 791 (7th Cir. 1995); 185 A.L.R. Fed 155 (collecting cases) ("the courts have uniformly found that Congress acted within its power under Article I, § 4").

apply any time there was a "substantial[ ] burden" on a person's exercise of religion. *Id.* at 515–16. The question posed was whether this went beyond Congress's power under section 5 of the Fourteenth Amendment, which allows Congress to "enforce" the Amendment. *Id.* at 517. The Court explained that the power to enforce did not include "the power to decree the substance of the Fourteenth Amendment's restrictions on the States." *Id.* at 519. In that context, the Court stated that legislation seeking to enforce the Fourteenth Amendment must display "congruence and proportionality" or else the "legislation may become substantive in operation and effect." *Id.* at 520.

Once again, none of this has anything to do with the NVRA and information disclosure. For one, *City of Boerne* is about RFRA; it says nothing about the NVRA or information access. Further, *City of Boerne* was concerned with Congress's enforcement power under the Fourteenth Amendment. In contrast, NVRA primarily derives from a different constitutional provision: Article I, section 4, which provides that the "Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the places of chusing Senators." *See Ass'n of Cmty. Organizations for Reform Now (ACORN)*, 56 F.3d at 793, 795. That "provision is broadly worded and has been broadly interpreted." *Id.* at 794. There is no relevant parallel between *City of Boerne*'s analysis of Congress going too far under the Fourteenth Amendment's section 5

"enforce[ment]" provision and Article I, section 4, which broadly allows Congress to impose election-related proscriptions on the states. *See id.* at 795 (explaining that Article I, section 4, provides "a general supervisory power" (citation omitted)).

*Second*, *City of Boerne*'s principles do not support the Foundation's theory. Rather, they again point in the opposite direction. *City of Boerne* was concerned with the line where legislation turns from remedial to substantive under the Fourteenth Amendment. *Id.* at 520. Crossing that line implicated "the traditional separation of powers" between the legislative and judicial branches. *Id.* at 523–24. The Court also was concerned with RFRA's "[s]weeping coverage" that "displac[ed]" laws "at every level of government." *Id.* at 532. It was "a considerable congressional intrusion into the States' traditional prerogatives and general authority." *Id.* at 534. In light of the separation of powers and "the federal balance," the Court concluded that the Act's "substantial-burden" test was an improper effort to substantively change what the Constitution meant and impose it on the states. *Id.* at 535–36.

As with *Shelby County*, these principles offer no support for invalidating Wisconsin's exemption. The NVRA's exemption, of course, is not a substantive change to the constitution, which was *City of Boerne*'s concern. And further animating the Court's decision in *City of Boerne* was the sweeping intrusion into states' affairs. The Foundation again turns the precedent on its head by relying on *City of Boerne* to support *more* intrusion. Even at their most

abstract, that is the opposite of what the principles in *City of Boerne* stand for. Rather, the principles there might be fodder for invalidating burdens on states, not adding to them.

The Foundation's reliance on *Shelby County* and *City of Boerne* is misguided. Because the Foundation's lawsuit turns on the threshold proposition that those cases render the NVRA's exemption unconstitutional (Dkt. 1 ¶¶ 1, 149, 159), this is an additional reason why its complaint should be dismissed.

### III. Even if the irrelevant language the Foundation extracts from the cases applied here, the Foundation's case would still fail.

The Foundation's complaint and its invocation of *Shelby County* and *City of Boerne* fail to state a claim for the reasons discussed above: the Foundation identifies no right supporting its lawsuit and the cases it says are key are about distinct topics and principles. In addition, and for the sake of completeness only, the following explains why the Foundation's lawsuit would fail even if the language it cherry-picks from the cases applied.

*First*, the Foundation proposes the following language should apply from *Shelby County*: "With respect to a law that treats the states differently, 'a statute's "current burdens" must be justified by "current needs."'" (Dkt. 1 ¶ 60.) In other words, the Foundation seeks to derive an all-purpose test from *Shelby County* that any law that treats states differently comes with a "current burdens" and "current needs" analysis. Even putting aside the other

deficiencies in that effort, entertaining that language here gets the Foundation nowhere.

There are no "current burdens" on Wisconsin and the "current needs" in Wisconsin are exactly the same as when the NVRA was passed: Wisconsin then and now has same-day voter registration at the polls. (Dkt. 1 ¶ 21.) Unlike in *Shelby County*, nothing has changed over time vis-à-vis Wisconsin. *See Shelby County*, 570 U.S. at 556.

Then and now, same-day registration obviates the core concerns that the NVRA seeks to address: making "it easier to register to vote in federal elections." *Ass'n of Cmty. Organizations for Reform Now (ACORN)*, 56 F.3d at 792. Wisconsin already has "procedures that will increase the number of eligible citizens who register to vote" and that "enhance[ ] the participation of eligible citizens as voters." 52 U.S.C. § 20501(b)(1)–(2). As commentators have noted, "same-day registration is the gold standard" as it "lowers the barriers to participation by combining two steps, registration and voting." Daniel P. Tokaji, *Responding to Shelby County: A Grand Election Bargain*, 8 Harv. L. & Pol'y Rev. 71, 91–92 (2014). States with same day registration have "historically boasted turnout rates ten to twelve percentage points higher than states that do not offer" it. Marissa Liebling, *Introduction to the Northern Illinois College of Law 2014 Symposium Shelby County v. Holder: A New Perspective on Voting Rights*, 34 N. Ill. U. L. Rev. 507, 524 (2014).

19

As to the NVRA's concern with currentness and accuracy, same day registration also helps "to ensure that accurate and current voter registration rolls are maintained," 52 U.S.C. § 20501(b)(4), as it allows voters, when face-to-face with election workers, to provide the details for voting on the spot—proof of residence, age, an attestation that they have not voted already in the same election, etc., *see* Wis. Stat. §§ 6.55(2)(a), 6.33. It also provides the opportunity for voters to change details of their registration that might be in error: election-day registration "allows voters to update or correct their registrations on Election Day, which enables those who may have recently moved to vote without having to re-register in advance of the election." Dale E. Ho, *Election Day Registration and the Limits of Litigation*, 129 Yale L.J. Forum 185, 190 (2019). Further, "some voters are erroneously purged or left off the rolls due to administrative error, and [election day registration] allows these voters to correct their registration information on Election Day, ensuring that they are not disenfranchised." *Id.*; *see also* Tokaji, 8 Harv. L. & Pol'y Rev. at 101 ("Same-day registration also has the advantage of allowing for errors to be corrected . . . .").

In all, and as the Foundation recognizes in its complaint (Dkt. 1 ¶ 19), the public disclosure provision is read in conjunction with the overriding purpose of the NVRA: to increase successful voter registration that is "accurate and current." 52 U.S.C. § 20501(b)(1)–(2), (4); *see True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 721 (S.D. Miss. 2014) ("The Public Disclosure Provision

thus helps 'to ensure that accurate and current voter registration rolls are maintained.'")[6] The ability to correct registration on-the-spot helps obviate the need for public disclosure of voting registration rolls, as errors can be caught in real time and can be corrected with the voter in the flesh—nothing is more "current" then at-the-polls error correction.

Thus, even taking the Foundation's proposed language on its own flawed terms, it gets the Foundation nowhere.

*Second*, the Foundation's theory would fare no better under the language that it extracts from *City of Boerne*. The Foundation says that, based on *City of Boerne*, "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." (Dkt. 1 ¶ 77.) The next sentence in *City of Boerne* explains what this test is for: "Lacking such a connection, legislation may become substantive in operation and effect." *City of Boerne*, 521 U.S. at 520.

There is no coherent way to apply this language to an exemption from a statutory burden, but the following gives it a try. As for "congruence," and as summarized above, there is a fit between exempting Wisconsin from the NVRA and the fact that Wisconsin's same-day registration at the polls already forwards the goals that the NVRA promotes. As for "proportionality," the

---

[6] On the other hand, the "NVRA was not designed as a tool to root out voter fraud, 'cross-over voting,' or any other illegal or allegedly illegal activity associated with casting a ballot on election day." *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 722 (S.D. Miss. 2014).

Supreme Court explained that it was concerned with laws that go too far, with "[s]weeping coverage" "displacing laws" in a way that is out of synch with the ill being addressed. *Id.* at 532. The opposite is true here: the exemption for Wisconsin creates no coverage and displaces no law; rather, the Foundation seeks to displace Wisconsin law. It follows that a provision that has *no* effect cannot be disproportionate or "substantive in operation and effect," which is what the *City of Boerne* language potentially captures.

Putting aside its distinct Fourteenth Amendment context, the only arguably coherent way to apply the *City of Boerne* to the NVRA would be to contend that the obligations the NVRA imposed on *covered* states go too far. The argument might go that the NVRA's registration and informational burdens are not "proportional" to Congress's goal of increased voter registration. That effort would almost certainly fail, but it is the only theory that even begins to make sense. And that, again, is the opposite of what the Foundation seeks.

* * * *

No matter how it is sliced, the Foundation's lawsuit fails. It pleads no bona fide claim: there is no statutory or constitutional right to the records and invoking "equal sovereignty" does not change that. In addition, *Shelby County* and *City of Boerne* are not about the NVRA, access to information, or exemptions from federal law. Rather, they are about limits on Congress when it comes to imposing certain burdens. Lastly, even putting aside the

overarching problems, the cherry-picked language the Foundation cites does not help it. The lawsuit should be dismissed for any of these reasons.

## CONCLUSION

The Court should dismiss the case with prejudice and enter judgment accordingly.

Dated this 6th day of June 2024.

<div style="margin-left:40%">

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/Anthony D. Russomanno
ANTHONY D. RUSSOMANNO
Assistant Attorney General
State Bar #1076050

BRIAN P. KEENAN
Assistant Attorney General
State Bar #1056525

Attorneys for Defendant

</div>

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-2238 ADR
(608) 266-0020 BPK
(608) 294-2907 (Fax)
russomannoad@doj.state.wi.us
keenanbp@doj.state.wi.us

## CERTIFICATE OF SERVICE

I certify that on June 6, 2024, I electronically filed the foregoing Brief in Support of Defendant's Motion to Dismiss with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 6th day of June 2024.

s/Anthony D. Russomanno
ANTHONY D. RUSSOMANNO
Assistant Attorney General